STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0991

STATE OF LOUISIANA

VERSUS

BRANDON GOUDY

Judgment Rendered: __APR 1 9 2024__

* * * * *

Appealed from the
17th Judicial District Court
Parish of Lafourche, State of Louisiana
No. 592932

The Honorable F. Hugh Larose, Judge Presiding

* * * * *

Kristine Russell
*District Attorney*
Joseph S. Soignet
Shaun George
*Assistant District Attorneys*
Thibodaux, Louisiana

Attorneys for Appellee,
The State of Louisiana

Gwendolyn K. Brown
Baton Rouge, Louisiana

Attorney for Appellant,
Brandon Goudy

Brandon Goudy
Angola, Louisiana

Appellant,
In Proper Person

* * * * *

BEFORE: WELCH, WOLFE, AND STROMBERG, JJ.

**WOLFE, J.**

The defendant, Brandon Goudy, was charged by grand jury indictment with one count of second-degree murder, a violation of La. R.S. 14:30.1(A)(1), and pled not guilty. Following a trial, the jury unanimously found the defendant guilty as charged. The trial court denied the defendant's motions for new trial and post-verdict judgment of acquittal, and sentenced the defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant now appeals. We affirm the conviction and sentence.

## FACTS

On the evening of September 15, 2019, Tedrick Johnson and his family members, Einajara Clark and Renata Hawkins, were talking outside of Clark's home on Ledet Street in Thibodaux, Louisiana. A black vehicle drove slowly down the street and stopped in front of the home, then the driver fired several gunshots out of the window before speeding off. Neither Clark nor Hawkins were struck by the gunfire, but Tedrick suffered a fatal gunshot wound to the heart. After witnesses identified the defendant as the shooter, he was arrested for Tedrick's murder.[1]

---

[1] Tedrick shares the same surname as one of his relatives, Justin Johnson. In order to avoid confusion, we reference them by their first names.

2

## SUFFICIENCY OF THE EVIDENCE

In three combined assignments of error,[2] the defendant argues the evidence was insufficient to support the conviction.[3]

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Alexander**, 2022-01205 (La. 5/5/23), 362 So.3d 356, 357-58; see also La. Code Crim. P. art. 821(B). When a conviction is based on circumstantial evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that that every reasonable hypothesis of innocence had been excluded. **State v. Jones**, 2016-1502 (La. 1/30/18), 318 So.3d 678, 681-82. The question for the reviewing court is not whether the defendant has suggested another possible hypothesis that could explain the events in an exculpatory fashion; rather, the reviewing court evaluates the evidence in the light most favorable to the state

---

[2]   The defendant filed a *pro se* brief that raised the same three assignments of error with the same supporting arguments as in his counseled brief.

[3]   In his second assignment of error, the defendant argues the trial court erred in denying his motion for post-verdict judgment of acquittal that was premised upon the insufficiency of the evidence and in his third assignment of error, the defendant argues the trial court erred in denying his motion for new trial that was premised upon the insufficiency of the evidence. A challenge to the sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal, not a motion for new trial. See La. Code Crim. P. art. 821. Appellate courts may review the grant or denial of a motion for new trial only for errors of law. See La. Code Crim. P. art. 858. Thus, the only issue reviewable in the combined assignments of error is the constitutional issue of sufficiency of the evidence, which was raised in the defendant's motion for post-verdict judgment of acquittal. See **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), ___ So.3d ___, 2023 WL 7270882, *1 n.3; **State v. Francis**, 2019-1392 (La. App. 1st Cir. 12/17/20), 318 So.3d 862, 867 n.6.

and determines whether the alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilty beyond a reasonable doubt. **Jones**, 318 So.3d at 682.

Second-degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). It may be formed in an instant. **State v. Brown**, 2016-0998 (La. 1/28/22), 347 So.3d 745, 787, cert. denied, ___ U.S. ___, 143 S.Ct. 886, 215 L.Ed.2d 404 (2023). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant; however, circumstantial evidence must exclude every reasonable hypothesis of innocence. See La. R.S. 15:438; **Brown**, 347 So.3d at 787. For example, specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Reed**, 2014-1980 (La. 9/7/16), 200 So.3d 291, 309, cert. denied, 580 U.S. 1166, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017).

On appeal, the defendant concedes that the evidence proved he shot and killed Tedrick. However, he claims his conviction should be overturned because the evidence also proved that he acted in self-defense.

A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). When self-defense is asserted as a defense by the defendant, the State has the burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. **Reed**, 200 So.3d at 309. Thus, the issue in this case is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did

4

not kill the victim in self-defense. See **State v. Brown**, 2023-0293 (La. App. 1st Cir. 11/28/23), ___ So.3d ___, 2023 WL 8228182, *2.

At trial, the State presented overwhelming evidence that the defendant herein did not act in self-defense when he shot Tedrick. Clark testified that on the night of September 15, 2019, she was outside with Tedrick and her mother, Hawkins, when a vehicle slowly approached and stopped in front of her house. Without saying anything, the driver suddenly fired a gun at them before speeding off. Clark testified that Tedrick did not shoot a gun, nor did he have a gun in his possession. She further testified that no one else outside the vehicle shot a gun, and there were no other vehicles on the street at that time.

Hawkins testified that she noticed a black truck slowly drive down the street before stopping in front of Clark's home. When the vehicle stopped, Hawkins observed "something shiny" in the driver's window and heard multiple gunshots come from the vehicle before it sped away. Hawkins testified that the driver did not say anything before shooting. She further testified that she did not see Tedrick or anyone else with a gun. She stated that Justin Johnson, Tedrick's cousin, was also there that night, but he was behind the house at the time of the shooting.

Justin testified that earlier on the night of September 15, 2019 (the night of the shooting), he was at the Mobil gas station ("Mobil") on Canal Boulevard, which is near Clark's home on Ledet Street. He denied having an altercation with the defendant at Mobil and stated that when he returned to Ledet Street, he asked Tedrick to go back to Mobil for him. Justin testified that after Tedrick returned from the store, he told Tedrick that he observed a black Chevy Tahoe driving down the street and to "watch yourself." According to Justin, Tedrick replied, "I'm not worried about nobody, I'm going home," and walked past him toward Ledet Street. Justin testified that approximately one and a half minutes later, he heard several gunshots.

5

Justin stated that Tedrick did not have a gun, nor were there any other vehicles on Ledet Street at the time of the shooting.

Dr. Ellen Connor performed the autopsy on Tedrick and testified that he suffered one gunshot wound to the chest, which pierced his heart and caused his death. During the autopsy, Dr. Connor recovered a metal jacket fragment from Tedrick's body.

Jamal Washington, the defendant's friend, testified that at around 9:00 p.m. on September 15, 2019, the defendant left Washington's home at King's Place Apartments on Martin Luther King Drive.[4] A short time later, the defendant returned to grab a few things before leaving again. Washington testified that when the defendant returned a second time at around 11:00 p.m., the defendant had his gun and was screaming that "they shot at him." Washington also observed blood on the defendant's hand. According to Washington, the defendant called him between 3:00 and 5:00 a.m. the next morning and instructed him on what to say to the police.

In his interview with police, Washington stated he and the defendant went to Mobil, where Justin confronted the defendant. They then traveled to Ledet Street, and the defendant shot Tedrick. Washington confirmed the defendant was the only person who fired a gun that night. At trial, however, Washington recanted his statement and testified that he did not go to Mobil or Ledet Street with the defendant.

Officers with the Thibodaux Police Department responded to the scene on 1602 Ledet Street after Clark called 911. Officers then interviewed witnesses and developed the defendant as a suspect, after which they traveled to the defendant's place of employment. Upon searching the defendant's vehicle, officers collected two spent shell casings between the hood and windshield, and one spent shell casing from the front passenger side floorboard. Officers did not observe any bullet holes

---

[4] According to Washington, the defendant had been living with him for approximately one month before the shooting.

6

or damage to the defendant's vehicle, except for broken glass on the driver's side rearview mirror. However, the mirror did not have any defects which indicated it was damaged by a bullet.

Officers also obtained a search warrant for Washington's residence, where they recovered the defendant's .40 caliber pistol. Ballistics testing indicated that the three casings recovered from the defendant's vehicle, as well as the jacket fragment from Tedrick's body, were all fired from the defendant's firearm.

The defendant testified at trial and stated that at around 9:00 p.m. on September 15, 2019, he and Washington went to Mobil, where Justin called him a "rat" and accused him of informing on someone. He denied the accusation and walked into Mobil. Upon exiting, Justin told him, "Make sure you keep your gun on you." The defendant testified that as he drove away from Mobil, Justin fired several shots at his vehicle. However, the defendant testified that he did not think Justin was trying to kill him at that time.

The defendant explained that he and Washington returned home and remained there about thirty minutes until they left again to go to a different gas station. As they headed back home a second time, they passed Mobil and eventually turned onto Ledet Street. The defendant observed two or three women walking down the street and began to drive slower as one of them started walking toward his truck. As he drove past the women, he looked to his left and saw two individuals come out from behind a trailer. The defendant testified that Tedrick, who was about ten to fifteen feet away from his vehicle, began shooting at him. After a bullet struck his rearview mirror, he grabbed his firearm and began shooting until he was shot in the hand, after which he drove himself and Washington home.[5] He further testified that at the time

_____

[5] The defendant testified he did not receive medical treatment for this injury, as he believed a bullet only grazed his hand, and the jail, where he was later incarcerated, declined to treat it.

he fired his weapon on Ledet Street, he was afraid for his and Washington's lives and believed he had to return fire to protect himself.

In his statement to police, the defendant stated he went to Mobil, where Justin shot at his vehicle. He then returned to Washington's home for a short period of time before leaving again with Washington. The defendant stated they eventually ended up on Ledet Street, at which point he observed Tedrick and another man. According to the defendant, Tedrick then shot at him, after which the defendant grabbed his firearm and returned fire until a bullet grazed his hand. Additionally, the defendant stated he had no issues with Tedrick, and they saw each other almost every day.

Approximately six months after the defendant was arrested and placed in the Lafourche Parish Detention Center, a nurse recovered a spherical object from his hand, which was later submitted for ballistics testing. The object, a suspected piece of lead, was very round, did not contain a jacket, and had no surface bearing that would indicate it was part of a bullet.

On appeal, the defendant argues the evidence showed that he shot Tedrick in self-defense. Because he had been shot at earlier in the day by Justin, he claims he reasonably believed his life was in danger when two men ran toward him with guns on Ledet Street. While the defendant acknowledges the State produced evidence to rebut his self-defense claim, he contends his account was more reasonable, and the jury should have found the State's evidence insufficient.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. **Reed**, 200 So.3d at 312. Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Alexander**, 2014-1619 (La.

8

App. 1st Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a trier of fact's determination of guilt. **State v. Bessie**, 2021-1117 (La. App. 1st Cir. 4/8/22), 342 So.3d 17, 23, writ denied, 2022-00846 (La. 9/20/22), 346 So.3d 802.

In finding the defendant guilty of second-degree murder, it is clear the jury rejected the defendant's claim of self-defense and concluded the use of deadly force against Tedrick under the particular facts of this case was neither reasonable nor necessary. Clark and Hawkins both testified that the defendant was the only person who shot a firearm on the night of the murder. They further testified that both Tedrick and Justin were unarmed and did not shoot at the defendant's vehicle. Justin likewise testified that neither he nor Tedrick had a gun. Although the defendant contends he was afraid for his life because Justin allegedly shot at him earlier that night at Mobil, Justin testified that there was no such incident, and officers were unable to find any evidence of a shooting at that location. Even assuming there was a shooting at Mobil, the defendant testified he did not believe Justin was trying to kill him and acknowledged Tedrick was not involved in the incident. Accordingly, we cannot conclude the jury was irrational in rejecting the defendant's self-defense claim.

Washington further corroborated the testimony of Clark, Hawkins, and Justin that the defendant was the only individual who fired a weapon on Ledet Street. Although Washington recanted his initial statement to officers at trial, he described the night of the shooting in great detail in his interview, stating he was positive no one shot at the defendant before or after he pulled out his weapon and shot Tedrick. Any discrepancy between his prior statement and his in-court testimony goes to the weight of the evidence, not its sufficiency. See **State v. Coleman**, 2017-1045 (La.

9

App. 1st Cir. 4/13/18), 249 So.3d 872, 881, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155.

Moreover, the physical evidence failed to support the defendant's assertion that Tedrick, or anyone else, fired a gun at him such that he was required to resort to self-defense. The shell casings recovered from the scene and the defendant's vehicle, as well as the jacket fragment recovered from Tedrick's body, were all fired from the defendant's firearm. Officers were unable to locate any evidence at the scene or on his vehicle that might indicate the defendant was shot at prior to firing his weapon. Finally, ballistics testing indicated the object recovered from the defendant's hand was not a bullet fragment, as the defendant claimed.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the State proved beyond a reasonable doubt all of the elements of second-degree murder and that the defendant did not act in self-defense. This assignment of error is without merit.

**PATENT ERROR**

Pursuant to La. Code Crim P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), ___ So.3d ___, 2023 WL 7270882, *5. Here, the record reflects that after imposing sentence, the trial court failed to inform the defendant of the prescriptive period for seeking post-conviction relief as required by La. Code Crim. P. art. 930.8(C). However, the trial court's failure to do so has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing.

**State v. Verdin**, 2022-1178 (La. App. 1st Cir. 9/7/23), 2023 WL 5767592, *19 (unpublished), <u>writ denied</u>, 2023-01319 (La. 3/12/24), ___ So.3d ___. Instead, we direct the trial court to provide the defendant with written notice of the prescriptive period for seeking post-conviction relief within ten days of the rendition of this opinion and to file confirmation of such notice into the trial court record of these proceedings. <u>See</u> **Verdin**, 2023 WL 5767592 at *19; **State v. Kott**, 2006-0973 (La. App. 1st Cir. 12/28/06), 2006 WL 3813712, *1 (unpublished), <u>writ denied</u>, 2007-0089 (La. 10/12/07), 965 So.2d 392.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**